Conlon v. Intervarsity Christian Fellow, et al. Oral Argument, not to exceed 15 minutes per side. Ms. Kennedy for the appellant. May it please the Court, the issues before you today are whether the District Court erred when it ruled that defendant Ivesia had not waived his affirmative defense of ministerial exception when it specifically and purposely availed itself to the anti-discrimination standards of Title VII and holds itself out to the world as an equal opportunity employer. Secondly, whether the District Court erred when it ruled that the ministerial exception applies to the individual supervisory defendants, Bailey and Papai. Under the Michigan statute, which is a rare one, individual supervisors may be held liable for their discriminatory conduct and the ministerial exception only applies to religious institutions. What I plan to do today is to summarize the facts and then outline my issues that I plan to argue. Intervarsity Christian Fellowship is an evangelical campus mission serving students and faculty on college and university campuses nationwide and internationally. It employs 1,000 people or more all over the world. The applicants... Counsel, I think you can assume that we have read your briefs, that we have reviewed your record, and that we are quite familiar with the facts. You're certainly welcome to proceed that way, but we might want to proceed to your arguments. Okay. Well, I would like to point out that the applicants that want to pursue employment with the IDCF organization go to that website for job descriptions, position availability, terms and conditions of employment, and actually apply to the position via the website. Employees that are currently employed go to these employment pages on the website to look at upcoming events, other opportunities in the organization, special camps that sometimes occur, and other new opportunities that might be available for these employees. Counsel, could I ask a question about the nature of your argument? Yes. You're not arguing that that language creates a contractual obligation. You're instead arguing that that hooks you into the statutory scheme. Exactly. Is that correct? Exactly. Isn't it a little anomalous to have parties amend the statutory scheme that applies to them? I don't know. I mean, if this exception would apply and defendants would not be covered by the statutory scheme in the absence of this notice on the website, how does the statute all of a sudden apply just because they put a notice on the website? Well, yeah, that's the basis of my argument, Your Honor. It's because of the specificity of the language, which distinguishes it from any other case, that creates a waiver. There are some categories that Title VII doesn't apply. I mean, it doesn't ban discrimination based on eyesight or hair color. Could you just sort of say, well, we want to have Title VII apply to us and not discriminate on the basis of hair color or put that on the website and then Title VII would apply to all that? I mean, that's changing what Congress provided. Well, but they're not asking for those sorts of things. Well, but you are asking for something that's not in the statute. I think you can see that. You're asking for coverage of ministers and ministers aren't covered by the statute unless, according to you, unless you put on the website that you are. That's my puzzling. Well, I don't think the statute discusses the ministers. But the statute, I thought you were agreeing that without this item on the website, the because of the ministerial exception. Correct. And constitutionally, I guess, derived, but limits the scope of the statute. Is that correct? Well, I guess I'm not understanding how you're asking this. I guess I'm asking how, if the statute, by virtue of its constitutional limitations, does not cover this case without what you put on the website, then it's not in the statute. You're just sort of opting in. You're just sort of creating extra protections that aren't in the statute. Well, and my argument is that this language does do that. I know, but is that anomalous? How is that different from my hypothetical now? Are you just creating different categories of protection under Title VII to agree to it, but you're not relying on any kind of contractual obligation to sort of agree to yourself into statutory coverage that isn't in the statute? Well, the hair color and eye color are not covered by the statute. Gender is. Neither are ministers. No, ministers are not even mentioned in the statute. I'm sorry? Ministers are not even mentioned in the statute. That comes out of case law. That's the case law interpreting the statute. Yeah, the case law is interpreting the statute, but we're not recreating the statute. So you're giving the statute, in light of the case law, it doesn't cover these things. It's like it doesn't cover hair color, right? Well, I don't agree with you, but I understand your point. Well, what's the answer to that? The answer is that eye color and hair color are not protected classes under the statute. And this area is not either, right? Correct, but gender is. But what? Gender is covered in the statute, and when they said to the world that they— Gender is covered, except it's not covered when you go against ministers. Okay, I understand the two points. Is there an answer to that? I think I answered it. Okay. In fact, when you look at that language, the specific—let's go through it. This is on page—appellant's brief at the bottom of page 12 and the top of page 13. And I'll go through line by line. This is the language that's posted on every job position, every page, every job description of the website. Quote, InterVarsity Christian Fellowship USA is both an equal opportunity employer and faith-based religious organization. Unquote. Now, if the EEO language stopped there, I think there'd be a valid argument that this was not waived. It's very general and doesn't say much. Next slide. Quote, we conduct hiring without regard to race, color, ancestry, national origin, citizenship, age, sex, marital status, parental status, membership in any labor organization, political ideology, or disability of an otherwise qualified individual. Unquote. Now, if IVCF stopped there, we'd certainly get closer to a waiver as it gets more specific and states the groups that it's vowing not to discriminate against. But it doesn't stop there. Quote, the status of InterVarsity Christian Fellowship USA as an equal opportunity employer does not prevent the organization from hiring staff based on religious beliefs so that all staff share the same religious commitment. We argue that at this point, as for every protected class that was accepted out in this statement, IVCF has officially waived its right to use the affirmative defense as a ministerial exception. And it didn't even stop there. It went further to mention the statute it was specifically availing itself to. Pursuant to the Civil Rights Act of 1964, section 702, 42 U.S.C. 2000 E1A, InterVarsity Christian Fellowship USA has the right to and does hire only candidates who agree with InterVarsity's statement of agreement. So in other words, though 2000 E1A accepts IVCF out of the entire subchapter, they represent to the world that it's reserving the right to hire only candidates who agree with IVCF's religious beliefs and affiliations. This is a clear, knowing, and voluntary waiver of its affirmative defense of ministerial exception. It's different from the Hollins versus Methodist University case, where annually the organization affirms its agreement to an accreditation association that it will not discriminate against their discriminatory principles. So they promise a third-party organization that they're not going to discriminate based on their policies. This is not something that is shown to the world, and luring in employees to apply because of their promise not to discriminate against these protected classes. So are you saying that the language about the Civil Rights Act in the last sentence of that first paragraph are just surplusage? They have no meaning? I'm saying exactly the opposite. I'm not following that. Okay. First it states all the protected classes that it's not going to discriminate against. But then it accepts out. But we do have the right under the statute not to be able to discriminate against religious beliefs. So it then opens the door for the rest of them. It says to the people, you know, we're not going to take you if you don't agree with us with our religious beliefs. But everyone else, we're not going to discriminate against you. You don't see that as they're availing themselves of the ministerial exception? No. The lower court stated that the language in question was a posting required by statute. That's not true. There's no requirement that they post language on any employee website or employee applications. The opponents jumped on this back and called the language on the website statutorily compelled. It's standard language. But this is anything but standard language. Can I just ask a clarifying question? You agree that if it were not for this language in the website, this language that you're on, if it were not for that, then you would not have a case? Correct. And you also are not relying on any contractual obligation? Correct. Thank you. I think the court is able to take judicial notice when it looks at the website to see the depth of how ubiquitous this language is. When you look at other websites like other religious institutions or schools, none of them have the kind of language. I've looked at some hospitals that are religious. I've looked at Kelvin College in Grand Rapids. There's nothing on the website that has any EL language whatsoever because they're not required to. What's the relevance of that? What's the relevance of that? What you just said. Because the lower court stated that this was statutorily required language. I see. The lower court also said that this language was just for their non-ministerial employees. Well, there's nothing that states that. And secondly, if you look at the job descriptions for their employees, almost every single one of them could be claimed to be a minister if it was on a paper. Where does the ministerial section come from? The First Amendment and the ecclesiastical clause? So it's just the Constitutional Protection Assembly? It's just the Constitutional Protection Assembly? Yes. I looked at various jobs on their website. There was a job for a kitchen, dining room area, and laundry person for one camp. And just after the requirement that they must be willing to be trained in the areas of food handling, serving, and facility laundry, the next requirement is that they need to have the ability to exemplify the love of Christ through humble, excellent, and genuine guest service. They also require that they include daily devotionals, weekly Bible studies, and share and pray for each other. I would guess that that would be seen in the eyes of the court as a minister. So to say that that language was for non-ministerial employees I think is without merit. Finally, this will not open the floodgates to further litigation other than to IDC as long as it keeps this language on. It won't upset Palins. It doesn't upset Hosanna. It's simply very fact-specific to this language on the website. And regarding the individual employees, the Elizabeth case is very specific that individual supervisors may be held accountable, and the ministerial exception only applies to religious institutions. Thank you. Thank you, Lisa Court. My name is Abigail Southerland, and I represent the Appalese InterVarsity Christian Fellowship, as well as IVCF, which is InterVarsity's, a new name for InterVarsity Christian Fellowship, IVCF's employees, Fred Bailey and Mark McPie. I would like to note from the outset that Ms. Conlon concedes three very important facts, and that is that IVCF is a religious organization, that she was a ministerial employee at the time of her termination, and that this case does fall squarely within the ministerial exception. Despite these concessions, Appellant Conlon asked this court to defy well-settled case law in order to allow her to proceed against IVCF and its individual employees. This court rejected Appellant Conlon's request for three reasons. First, the facts in this case fall significantly short of demonstrating a waiver by IVCF. Second, and more importantly, the ministerial exception is not a defense that can simply be waived pursuant to the First Amendment. And third, the ministerial exception cannot be circumvented by holding individual employees of IVCF liable for a decision made on behalf of the religious organization, especially when that decision is made regarding a ministerial employee. The District Court did not err in finding that IVCF had not waived the right to assert the ministerial exception. The facts alleged in this case by Ms. Conlon fall significantly short of meeting the clear and compelling test necessary, which requires an intelligent, knowing, and voluntary waiver of a constitutional right. There is a presumption against this waiver, and this court has specifically rejected the very same argument that Ms. Conlon has attempted to make here, and that is that the mere act of posting boilerplate EEO language on her website constitutes a waiver of the ministerial exception. It is important to note, and as Your Honor pointed out earlier, that this language that Ms. Conlon relies upon to demonstrate the waiver speaks generally of Title VII. There is absolutely no mention of IVCF's constitutional rights. There's no mention of what IVCF's retention policies are with regards to ministerial employees. It's important to take a look at this language and take note of what is not included in this disclaimer. And as Your Honor pointed out earlier, the ministerial exception is not grounded in Title VII. It is not mentioned at all in Title VII or contemplated. The ministerial exception is grounded in the First Amendment to the United States Constitution. In glaring absence of supporting baseball on appeal, Ms. Conlon has attempted to reconcile her argument with this court's rejection of that very same argument in Holland's case by noting what she contends is a distinction regarding the alleged frequency with which IVCF posted the language. As IVCF has demonstrated in its brief, there is in fact no meaningful distinction to be made. IVCF posted the language on its website and the employer in Holland was obligated to post the language each and every time it hired a new employee. Importantly, the language relied so heavily upon upon Conlon in this case to suggest a waiver makes, again, no mention to the retention policies of IVCF or to ministerial employees. In fact, the specific language quoted by Ms. Conlon specifically says that it will conduct hiring without regard to identified protected classes or otherwise qualified individuals. That specific language should also be read to understand that this language posted on the website applied generally to candidates but only to those that were otherwise qualified individuals. There is simply no evidence or legal authority to support Ms. Conlon's argument that IVCF waived its right here. In any event, and regardless of the specific facts presented in this case or in any case, a decision by this court or any court which determined that the ministerial exception could in fact be waived when the decision involves a ministerial employee would violate the First Amendment. The ministerial exception is grounded in both religion clauses of the First Amendment and it bars the government from interfering with the decision of a religious group to fire one of its ministers. This protection extends beyond just mere religious reasons asserted by the religious organization. The Supreme Court in Hosanna-Tabor made very clear that this extends to any and all decisions, whether it is based upon a specifically religious reason or not. The Free Exercise Clause protects religious groups' right to shape its own faith and mission through its appointments, and the Establishment Clause importantly forbids the government from getting involved in those ecclesiastical decisions. Thus, the principle upon which the ministerial exception is based does not consider the personal rights of the party. In other words, IVCF cannot waive the ministerial exception on behalf of the government. The exception is in place to consider the institutional interest in protecting the constitutional principles of religious freedom. As the Supreme Court recognized... Can you make this argument in your briefs that it's not waiving? Yes, Your Honor. It was a second. It was part two under the first argument. As the Supreme Court recognized in Hosanna-Tabor, since the passage of Title VII of the Civil Rights Act and other employment discrimination laws, the ministerial exception has been applied to protect the right of religious organizations to select its leaders. In this case, the sole fact that Ms. Conlon served as ministerial employee for IVCF and was responsible for the spiritual direction and leadership of many of its employees and staff necessarily implicates matters of religion, not to mention that the waiver of the ministerial exception in this case would require the court to, at the very least, interpret a religious document. And that is IVCF separating and divorcing policy, under which Ms. Conlon was terminated. Can you show me in your brief where you raised this? Yes, Your Honor. Hold on just a second. It is on page 14. It begins with, as the Hosanna-Tabor court explained... Well, actually, Your Honor, it begins on page 13. It's that last paragraph. It begins with a discussion of the fact that the ministerial exception is grounded in both religion and law. Back to the separating and divorcing policy, which is the basis for which Ms. Conlon was terminated. The policy states that IVCF, this particular divorcing policy, states that IVCF believes in the sanctity of marriage and that all employees must continue to be maturing disciples of Jesus Christ. Thus, a finding of a waiver in this case would require the court to then determine, among many other improper things, whether Ms. Conlon was, in fact, still a maturing disciple of Jesus Christ, pursuant to IVCF policy. It's for this very reason that all courts to consider this issue have concluded that the waiver of the ministerial exception to allow application of Title VII to administer church-like relationship could violate the First Amendment. And this case is no exception. The second issue raised by Ms. Conlon on appeal represents yet another attempt just to circumvent the ministerial exception to allow her to proceed with her claim against IVCF's individual employees, Fred Bailey and Martha Pye. Any decision by this court, again, to hold the individual employees of IVCF liable instead of IVCF itself for the decisions made on behalf of IVCF would result in the very same violations of the First Amendment. Organizations can only act due to individual agents or employees. Clearly, it is the individual employees or leaders of religious organizations who make those employment decisions. Courts agree, and the Supreme Court in Hosanna Taper reiterated, the purpose of the ministerial exception is to ensure that the authority to select and control who will minister to the faithful is the churches alone. As a district court properly noted in this case, and to quote, allowing a ministerial employee to pursue employment claims against her supervisor would allow the state to become involved in a complete ecclesiastical decision of who shall minister to the faithful. These are the very concerns that underlie the ministerial exception. Appellant Conlon's argument fares no better under state law. Michigan courts have made clear that the ministerial exception exists in Michigan and that it applies with equal force under federal and state civil rights laws. Appellant Conlon's request that this court hold IVCF employees liable, or individually liable for the decision that they made as agents of IVCF would result in the same First Amendment violations. To conclude, I would contractually undertake to offer this protection to, but that wouldn't violate the First Amendment. Your Honor, I'm not sure I understand. Who do you mean by that? I'm a religious organization, and I hire someone, and I say I won't discriminate against you on the basis of gender, and the person takes the job on that undertaking. I'm not talking about Title VII at all. Then that person could soonly presume to that contractual undertaking. You're not saying that that's unconstitutional, are you? Your Honor, what I'm saying here is that the disclaimer relied upon Ms. Conlon. This was actually an earlier argument that was later dismissed when the complaint was amended. I'm not asking how they could say that. No, they could not here, because the ministerial exception You can't contractually obligate yourself not to discriminate against someone on the basis of gender, even if the person is a minister? Not when that factual scenario includes a religious organization and a ministerial employee. So that's startling to me. So you're saying that a religious organization could not hire someone and say, we won't discriminate against you on the basis of gender, and that could not be enforced in court? I think that they could promise that they wouldn't discriminate on the basis of gender. That's what we're talking about. That wouldn't necessarily violate or implicate at all the ministerial exception. However, if that ministerial employee at a later time challenges the employment decision and chooses to appeal that decision through avenues of the court, then at that time it does implicate. Based on the contract? Well, here there was a concession that there was no contract. That's why I'm asking you the hypothetical question. What about a contract? Your Honor, if the matter involves a breach of contract instead of a discrimination claim. Discrimination claim, I assume you mean under Title VII? Yes, Your Honor. Is that what you're asking? I have a hypothetical question about whether you could ever agree to this contractual, you're saying. Wouldn't that constitute what Judge Rogers is deciding here? Wouldn't that constitute a waiver of the constitutional protection if you entered into that contract, if the religious institution entered into that contract? Absolutely not, because what the organization is representing is that it won't discriminate based upon gender. What it's not representing is that it won't at a later date decide to terminate that ministerial employee. Based upon gender? Based upon gender, but not for religious reasons. Whether that employee later perceives it to be gender discrimination, the problem with this whole scenario and this argument is that for a religious organization, almost everything goes back to religious reasons for keeping a minister or firing a minister. It's all intricately tied in. I understand that. I just wonder what the answer is. The answer to the question is they couldn't do that. They could enter into a contractual obligation. I'm not saying that they can't. They can't from doing that. They really want to. We hire our religious preachers, and we want to be able to commit contractually to not discriminate against you on the basis of gender. They can't do that under the Constitution if they can't. No, I'm sorry. Obviously, they have to enter into a contract. An enforceable contract. An enforceable contract and promise not to discriminate based upon gender. The problem there then lies in if the claims are brought in a court of federal law or any law for that matter. Based upon gender. If it then requires the court to become involved in reviewing the religious reasons for which that ministerial employee was… Well, you just explained that it doesn't. That gender is tied – that religion is tied up into everything they do. So if they discriminate – if they fire them because they stole a pencil and the person says, no, it was because of my gender, you're saying… I suppose that… Under the ministerial exception, there's no recovery, right? But under the contract, there would be a recovery, right? That's a good question, Your Honor. And honestly, because those are not facts that are relevant necessarily here because of breach of contract or even if it's not… The answer gets to the extent to which you can waive your right. If you can waive it by entering into a contract, then the next question is why can't you waive it by opting into Title VII? I'm not saying you can… You're sort of fighting with the hypothetical and saying you can't even waive into it with a contract. Well, I guess I'm saying… I'm able to ask the next question. That's why I want to ask the first question. Well, what I'm saying is you can't. The religious organization is not in a position under the First Amendment to waive the ministerial exception on its own accord. Because the ministerial exception… But it cannot contractually undertake the use of it. Well, I'm saying it could enter into a contract with an employee and promise not to discriminate based upon gender, but it wouldn't then waive its right to over-certain the ministerial exception should that contract be challenged because it's not merely upon IVCF to waive that right. It can't be waived. The state actor is the other individual involved here. So you could waive it or you could enter into this in forceful contract or you could not? You could, but I'm not saying that it would waive the ministerial exception. And even, let's say, even if IVCF intended… The ministerial exception wouldn't even apply because it's a contract, right? Well, when the court begins to delve into the manner in which the contract was breached, it could result in excessive entanglement. Oh, but that's not the… I'm not sure. I must not be understanding exactly what you mean. There's been no argument of a breach of contract here. I'm trying to get at whether there's any kind of waiver that could ever exist, a waiver… Well, and Your Honor… …of the ability to be sued for gender. And it seems to me remarkable that you could argue that you could never sue based on a contractual obligation. And a contractual obligation, as the deciding judge indicates, would, in effect, be giving up your… whatever right you otherwise had not to do something. So the contract is about freely giving up what you're otherwise entitled to do. I think that as far as a ministerial… When you're talking about a religious organization, a ministerial employee, the ministerial exception is very broad. And it wouldn't matter if the employee's claim involved a claim of gender discrimination, marital discrimination. The Hosanna-Tabor Court has been very clear that the purpose of the exception is not to safeguard merely a church's decision to fire its minister only for religious reasons. The exception instead ensures that the authority to select and control who will minister to the faithful is strictly the church's alone. The ministerial exception simply can't be waived by IBCF because the other party involved and prohibited from the excessive entanglement is the court. And so even if you could find that IBCF had voluntarily waived a tribe to a certain ministerial exception, that exception is still in play because the courts are prohibited from conducting an inquiry. I guess I'm having trouble seeing which side you're coming down on. You seem to be coming down on both sides. They can't waive it, but they can't. They can't, but they can't. No, no, no. I lost my direction. To be very clear, they cannot… IBCF… The ministerial exception cannot be waived. So even if this court wanted to believe that IBCF could voluntarily waive the ministerial exception, it's only one part. The ministerial exception is not concerned with the personal rights of the party. It is more concerned with maintaining… So your answer would be that it would not be a valid contract. Well, essentially, if brought before a court of law, it would be challenged. No. So they can't enter into an enforceable contract, can they? Oh, can they enter into an enforceable contract? That's my question. No. They can't? Not under the ministerial exception. That's kind of startling. To conclude, if you don't have any further questions, I just want to make three simple points again. IBCF did not waive its right to assert the ministerial exception at any time in the future. There is simply no factual or legal support that would demonstrate a knowing, voluntary, and intelligent waiver. The argument that the ministerial exception can, in fact, be waived does not comport with First Amendment jurisprudence, which makes clear that the ministerial exception is not a personal right to be waived. It's in place for the protection of both parties, the state actor and the individual actor. For this very same reason, the employees of a religious organization cannot be held individually liable for the employment decisions they make on behalf of that religious organization. The First Amendment simply doesn't permit it. Defendant Appellees request that this court to affirm the lower court's decision dismissing Ms. Conlon's complaint with prejudice. Thank you, Counselor Baker. You're welcome. Yes, Your Honor points out exactly what our point is, whether it be under the contractual scenario where they promise that they won't discriminate and then debate and switch, just like this language does. We won't discriminate against you. Well, yes, we can. The Highlander's concurrence by Judge McKee begs the question, is this ministerial exception waivable at all? And I suggest to the court that if this language doesn't waive it, then the only outcome could be that it can't be waived. The difference I was trying to get at earlier, but I'm not sure I'm understanding it, is that normally you can contract into contractual obligations. Normally you can't contract into statutory obligations, but you can't get the whole imposition of the statutory scheme by means of a contract. It then becomes a contract. I don't believe so. Okay. Regarding the state claim, let me just make one more point. It almost seems like a fraudulent misrepresentation to have this language on your website, advertise it as ubiquitous, and then say, we don't have to follow it. Now, regarding the individual defendant, there is no precedent to say that the ministerial exception stretches beyond religious institutions. The reason there's no precedent on this issue is because the Michigan Act is such a unique act in the way that Elizabeth Court has interpreted it is very unique. That these individual supervisors can be held personally, not via a respondent superior, personally for the discriminatory actions. For these reasons, I ask that you reverse and remand the court's decision. Thank you. Thank you, counsel. Excuse me just a minute. We'll take all the next cases.